SIMPSON v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. August 6, 1917. Rehearing Denied October 1, 1917.)

No. 2943.

1. PROSTITUTION ☞1—WHITE SLAVE ACT—APPLICABILITY.
    Under White Slave Act June 25, 1910, c. 395, § 3, 36 Stat. 825 (Comp. St. 1916, § 8814), providing that any person who shall induce "any woman or girl to go from one place to another in interstate or foreign commerce * * * for the purpose of prostitution or debauchery or for any other immoral purpose, or with the intent and purpose on the part of such persons that such woman or girl shall engage in the practice of prostitution or debauchery or any other immoral practice," shall be punished as therein directed, defendant, who induced a woman to travel from California to Mexico to manage a house of prostitution, was guilty; the act not being limited to the personal immorality of the woman induced to travel in interstate commerce.

2. INDICTMENT AND INFORMATION ☞110(3)—WHITE SLAVE ACT—SUFFICIENCY.
    An indictment in the language of the statute, charging that the defendant unlawfully induced a named woman to travel in interstate commerce from California to Mexico for the purpose of managing a house of prostitution and conducting a place where persons of the opposite sexes meet and have illicit intercourse, is sufficient.

3. COURTS ☞374—CRIMINAL PROSECUTIONS—INDICTMENT—APPLICABILITY OF STATE LAWS.
    Indictments in federal courts are not amenable to state laws.

4. PROSTITUTION ☞4—WHITE SLAVE ACT—EVIDENCE—SUFFICIENCY.
    In a prosecution under White Slave Act, § 3, evidence held to support a verdict of guilty.

5. CRIMINAL LAW ☞1169(5)—IMPROPER EVIDENCE—HARMLESS ERROR.
    In a prosecution for a violation of White Slave Act, § 3, that the court received secondary evidence of the contents of two telegrams, which later had to be stricken out because the government was unable to make the preliminary proofs, was not reversible error, the defendant making no objection to the procedure nor requesting a stronger admonition to the jury, or asking that other means be adopted for his protection, competent proof convincingly pointing to the guilt of defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. PROSTITUTION ⊙—4—WHITE SLAVE ACT—EVIDENCE—TELEGRAPH COMPANY
   RECORDS.
   To show that defendant induced a woman named to travel from Cali-
   fornia to Mexico, the records of a telegraph company, showing that de-
   fendant had a charge account with it and that a few days before she made
   the trip he had sent telegrams addressed to the city where she then was,
   showing only the surname of the addressee, which was the same as that
   of the woman named, were material.

In Error to the District Court of the United States for the Southern
Division of the Southern District of California; Oscar A. Trippet,
Judge.

James B. Simpson, indicted as James B. Miller, was convicted of a
violation of the White Slave Act, and brings error. Affirmed.

Alfred F. MacDonald and Jud R. Rush, both of Los Angeles, Cal.,
for plaintiff in error.

Albert Schoonover, U. S. Atty., and J. Robert O'Connor and Clyde
R. Moody, Asst. U. S. Attys., all of Los Angeles, Cal., for the United
States.

Before GILBERT and HUNT, Circuit Judges, and DIETRICH,
District Judge.

DIETRICH, District Judge. James B. Simpson, the plaintiff in
error, was convicted of a violation of section 3 of the White Slave
Act (36 Stat. 825), which provides that any person who shall know-
ingly induce "any woman or girl to go from one place to another in
interstate or foreign commerce * * * for the purpose of pros-
titution or debauchery or for any other immoral purpose, or with the
intent and purpose on the part of such person that such woman or girl
shall engage in the practice of prostitution or debauchery or any other
immoral practice," etc., shall be punished as therein directed. There
are two counts in the indictment, in the first of which the defendant
is charged with having unlawfully induced one Vida White, alias
Rogers, to travel in interstate commerce from California to Tia Juana,
in the republic of Mexico, "for a certain immoral purpose, to wit, for
the purpose of placing said Vida White, alias Vida Rogers, in a house
of prostitution and having her remain therein." The sufficiency of this
count we need not consider, for upon it the defendant was acquitted.
The second count, upon which he was found guilty, is in all particu-
lars identical with the first, except that here it is charged that the de-
fendant's purpose was to have the woman "manage a house of pros-
titution and conduct a place where persons of the opposite sexes meet
and have illicit sexual intercourse."

[1] It is first contended that the indictment is insufficient for the
reason that the management of a house of prostitution does not come
within the denunciation of the statute, in that, as is claimed, only the
personal sexual immorality of the woman induced to travel in inter-
state commerce is contemplated, and a woman may conduct a house
of prostitution without engaging in such immoral practice. We do
not think the scope of the statute is limited to cases of personal acts of

sexual immorality upon the part of the woman transported. It is to be conceded that under the rule of ejusdem generis, the phrase "other immorality" implies sexual immorality, but it would be too rigorous an application of this rule to limit the phrase to the personal sexual immorality of the woman herself. It is well understood, of course, that the general purpose of Congress in enacting the law was to check the spread of prostitution and other forms of sexual debauchery by denying, in a large measure, to those engaged in that business, the facilities of interstate commerce, and for one having a house of prostitution in Mexico to induce a woman to go there to become the efficient means for maintaining what is perhaps the most offensive form of the evil against which the statute is expressly directed would admittedly be violative of the letter, and, as we think, clearly contrary to the spirit, of the statute. This view is thought to be supported by the construction placed upon the act in the Athanasaw Case, 227 U. S. 326, 33 Sup. Ct. 285, 57 L. Ed. 528, Ann. Cas. 1913E, 911, and is not inconsistent with anything decided by this court in Suslak v. United States, 213 Fed. 913, 130 C. C. A. 391.

[2, 3] It is further objected that the indictment does not conform to the California Penal Code. But it charges the offense in the language of the statute, and sets it forth with sufficient particularity to enable the defendant intelligently to prepare his defenses; no more is required. Indictments in the federal courts are not amenable to state laws.

[4] It is next assigned that the evidence is insufficient to support the verdict, and emphasis is particularly laid upon the dearth of proof touching the averment that the defendant induced the woman to go to Mexico. There is direct evidence that defendant owned and operated a house of ill fame, called The Palace, at Tia Juana, that on the day after Thanksgiving in 1915 Vida Rogers and another woman by the name of Louise Bordeau left a house of like character in San Francisco and went directly to San Diego, where they were met at the train by the defendant; that the next day they were both at Tia Juana in The Palace, the former as "mistress" and the latter as an inmate, together with about 20 other women. The defendant also was there, and from that time on he often came there, and dined at the restaurant connected with the house and frequented by the women. It was further shown that Vida White, or Rogers, received two telegrams at San Francisco, one a few days before she went to Tia Juana, and the other about two weeks earlier. These telegrams are not in the record, but it is shown that during this period the defendant, who with his wife occupied rooms at the Victoria Apartments in San Diego, had a "charge account" with the Western Union Telegraph Company, and according to the records of this company he sent a telegram to one White, at San Francisco, on November 15th, and another on November 23d. It further appears that he was acquainted with Vida White and visited her upon several different occasions at the house of ill fame in San Francisco, where she was the "mistress." The jury doubtless found that defendant induced her to go to Tia Juana by the promise of compensation, either contingent or absolute, in consideration of

her taking charge of the house. That such an arrangement must have existed almost immediately after she got into Mexico is scarcely open to question, and it is a fair inference that it was entered into before she left San Francisco. Upon the whole, while perhaps remotely circumstantial, the evidence is of such character as almost irresistibly to produce conviction of the defendant's guilt.

[5] It is also assigned as error that the court received secondary evidence of the contents of the two telegrams above referred to. At the close of the case for the government it was stricken out, with instructions to the jury not to give it place in their consideration. That it was improvidently received is conceded, and the only question now is whether under all the circumstances its reception constitutes reversible error. It is hardly necessary to say that we do not commend the course pursued, for the reception of incompetent evidence is always attended with peril, even though it may be stricken out later on. And here there was apparently no substantial reason for not first requiring the preliminary proofs which it later turned out the government was unable to produce. But, it is to be noted, there can be no suspicion that the prosecution acted in bad faith, for the district attorney volunteered to withdraw the proffered telegrams until the requisite preliminary proofs could be made. It was upon the court's own motion that the testimony was received, subject to a motion to strike it out later on, and to this course no objection was raised by the defendant. Nor, when subsequently the testimony was stricken out, was there any request or suggestion that a stronger admonition be given to the jury, or that other means be adopted for the protection of the defendant against possible prejudice. Counsel for the defendant was presumably in a position more quickly to anticipate or apprehend jeopardy to his client than any one else, and it is not unreasonable to assume that upon an objection to the suggested course the court would have refrained from pursuing it; and if, at the time the evidence was stricken out, or later, there had been a request that the jury be more particularly warned against the danger of being unconsciously influenced by the incompetent testimony, the court would doubtless have granted it. If there were any evidence of bad faith on the part of the prosecution, or if the court had declined to give heed to any reasonable complaint or suggestion on the part of the defendant, or if we entertained any substantial doubt of the correctness of the verdict, we would not hesitate to direct a new trial. But the government ought not to be put to the necessity of retrying the case because of an incident treated so casually by all parties, when the competent proofs quite convincingly point to the defendant's guilt.

Under the well-established rule that exceptions to instructions must be specific (see rule 10 of this court [208 Fed. vii, 124 C. C. A. vii]), the defendant's general exception might, with propriety be wholly ignored, but we have examined the instructions, and we are satisfied that upon the whole the jury was fairly and adequately advised of the law.

[6] Although there are no assignments covering the admission of the two exhibits offered by the government involving the records of the

telegraph company, we are asked to review the action of the court in this respect, upon the ground that it was palpably erroneous and manifestly prejudicial to the defendant. In this view we cannot concur. With or without the contents of the telegrams, the evidence was clearly material, and upon the whole, while its competency is not entirely free from doubt, it is thought the preliminary proofs were sufficient to warrant its admission.

The judgment is affirmed.