**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ralph LEYVA, Jr., Defendant– Appellant.**

**No. 99–50793.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2002.

Filed Feb. 25, 2002.

---

Richard D. Rome, Van Nuys, California, for the defendant-appellant.

Steven M. Arkow, United States Department of Justice, Criminal Division, Los Angeles, California, for the plaintiff-appellee.

Before: TROTT, THOMAS, and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge.

Ralph Leyva ("Leyva"), a former asylum officer of the Immigration and Naturalization Service ("INS"), appeals his conviction and sentence for bribery and immigration document fraud in violation of 18 U.S.C. §§ 201(b)(2)(A) and (B), 1546, and 1001. Leyva argues that the district court erred in refusing to instruct the jury that § 201(b)(2)(B) requires a public official to have used his official position in the commission of a fraud. He also argues that insufficient evidence supported his convictions; the prosecutor made impermissible comments during closing argument; and the district court erred in refusing to grant a downward departure during sentencing. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

I.

During the asylum application process, Cesar Gonzalez ("Gonzalez"), an immigrant from Nicaragua, told an INS officer that he had executed prisoners while serving as a Sandinista soldier. The INS denied asylum to Gonzalez based on the finding that he was a past persecutor. In August 1997, Leyva, an INS asylum officer, offered to help Gonzalez for $1,500. Gonzalez promptly reported the arrangement to government authorities, agreeing to cooperate in an investigation against Leyva and to be recorded.

In exchange for the payment, Leyva arranged for an INS reinterview of Gonzalez, expunged information from files about the previous denial of asylum, and wrote an officer assessment omitting the references in Gonzalez's history to killing prisoners.

Government agents arranged for an informant to pose as Gonzalez's uncle, "Julio Boza" ("Boza"). Boza requested Leyva's assistance in obtaining asylum, and gave Leyva an outline of his background to support his application. In return for $1,500 in cash and approximately $1,100 in services, Leyva submitted applications for Boza for employment authorization and asylum. Leyva falsified the dates of Boza's entry into the United States so that Boza would be able to bypass an INS interview.

A grand jury indicted Leyva on two counts of bribery, 18 U.S.C. § 201(b)(2)(A) and (B), two counts of immigration document fraud, 18 U.S.C. § 1546, and one count of causing a false statement to be made to the INS, 18 U.S.C. § 1001.

Following trial, the jury found Leyva guilty on all five counts. Leyva's principal contention on appeal is that the district court erroneously rejected his proposed jury instructions on count two, which charged Leyva with violating § 201(b)(2)(B) by submitting Boza's falsified asylum and employment authorization applications in return for cash and services.

## II.

■ We review de novo the rejection of a defendant's jury instruction based on a question of law. *United States v. Eshkol,* 108 F.3d 1025, 1028 (9th Cir.1997). Whether § 201(b)(2)(B) requires a defendant to use his official position in the commission of a fraud is a question of law.

## III.

Subsection 201(b)(2)(B) makes it unlawful for any

> public official ... [to] directly or indirectly, corruptly demand[ ], seek[ ], receive[ ], accept[ ], or agree[ ] to receive or accept anything of value personally or for any other person or entity, in return for being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States.

Leyva argues that because § 201 criminalizes bribery of public officials, the term "corruptly" in § 201(b)(2)(B) must refer to the use of an official position. Without such a meaning, he contends, the subsection would become a general prohibition on fraud rather than on bribery. It is undisputed that the act of submitting Boza's applications to the INS did not involve use of Leyva's official position as an asylum officer.

■ At trial, Leyva proposed jury instructions for count two that required the government to prove that

> [t]he defendant acted corruptly in that he received, accepted, or agreed to receive or accept the approximately $1,500 in cash payments, and services valued at approximately $1,100 in return for using his official position as an asylum officer to knowingly commit and aid in committing a fraud on the Immigration and Naturalization Service. . . .

Leyva also proposed the following definition of "corruptly":

> A public official acts corruptly when he accepts a thing of value in return for knowingly violating his official duty. . . . [T]he public official must use his official position to commit or aid in the commission of the fraud.

The district court did not err in rejecting these instructions because Leyva's proposed "use of official position" condition is supported by neither the text of the statute nor case law. Under the rules of statutory construction, "[t]he plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results." *United States v. Daas,* 198 F.3d 1167, 1174 (9th Cir.1999).

Here, the plain language of § 201(b)(2)(B) requires only that the public official accept a thing of value in exchange for perpetrating a fraud. The absence of any official act requirement is particularly pointed in light of explicit "official act" or "official duty" language in other subsections of § 201. *See* § 201(a)(3) (defining "official act"); § 201(b)(1)(A) (prohibiting paying an official "with intent to influence any official act"); § 201(b)(2)(A) (prohibiting an official from accepting payment in return for "the performance of any official act"); § 201(b)(1)(C) and (2)(C) (prohibiting giving or receiving value to induce acts in violation of the "lawful" or "official" duty of a public official); *see also Gozlon-Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted) (alteration in original)). Although the plain meaning of

§ 201(b)(2)(B) may not square with Leyva's personal understanding of bribery, application of the subsection as it stands does not lead to an unreasonable or impracticable result. We therefore hold that the use of an official position is not an element of the offense under § 201(b)(2)(B).

■ Moreover, the district court properly instructed the jury that, under § 201(b)(2)(B),

> a public official acts corruptly when he accepts or receives, or agrees to accept or receive a thing of value, in return for being influenced with the specific intent that, in exchange for the thing of value, some act would be influenced. This is known as the quid pro quo in Count Two.

These instructions accord with our decision in *United States v. Strand*, 574 F.2d 993 (9th Cir.1978),[1] in which we explained that the term "corruptly" under the bribery sections of § 201 refers to the defendant's intent to be influenced to perform an act in return for financial gain. *Id.* at 995–96.

We find the remainder of Leyva's claims on appeal to be meritless. Because the district court did not err in instructing the jury on the elements of § 201(b)(2)(B), we affirm the conviction and sentence.

**AFFIRMED.**

---

**1.** Although the *Strand* decision refers to official acts and duties, that case involved § 201(c)(3) (currently § 201(b)(2)(C)), which specifically prohibits an officer from accepting payment "in return for a violation of his official duty." *Id.* at 995.