**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alexander RASHKOVSKI,
Defendant–Appellant.**

**No. 01–50374.**

United States Court of Appeals,
Ninth Circuit.

Submitted June 4, 2002.*

Filed Aug. 28, 2002.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

1134

Alex Landon, San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney, Anne K. Perry and Mark P. Edelman, Assistant U.S. Attorneys, San Diego, CA, for the plaintiff-appellee.

Before: FERNANDEZ, WARDLAW and W. FLETCHER, Circuit Judges.

**OPINION**

WARDLAW, Circuit Judge.

Alexander Rashkovski appeals his conviction and sentence for smuggling aliens into the United States for prostitution purposes, in violation of 8 U.S.C. §§ 1324(a)(2)(B)(ii) and 1328, and 18 U.S.C. § 2422(a). His appeal presents the intriguing question whether sufficient evidence can support a conviction for persuasion or inducement to travel for the purpose of prostitution under § 2422(a), where the aliens themselves desired to leave Russia and travel to the United States, and did so having no actual intent to engage in prostitution. Rashkovski also challenges the district court's denial of his motion to sever his trial from that of his wife and co-defendant, Nataliya Kozlova, and its determination that each smuggled alien counted as a separate § 1324(a)(2)(B)(ii) violation at sentencing. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and affirm.

**I. Background**

In March 1999, during an investigation of prostitution rings run through Long Beach hotels, police sergeant Paul LeBaron noticed a small ad in the *L.A. Weekly's* Adult Classified section reading "European Paradise Birds: Find your paradise." Rashkovski and Kozlova answered the ad's phone line and offered to send a "girl" to LeBaron for $250 per hour.

A few hours later, Elena Zimina showed up at LeBaron's Hilton hotel room. She massaged his back and gestured towards his groin, asking in broken English if he wanted "a kiss." Police officers burst into the room and arrested Zimina for prostitution.

Zimina would later testify that she had been a prostitute for several months before her arrest, having traveled from Russia to the United States in December 1998 to work as an "escort" girl. Rashkovski and Kozlova had helped her cross illegally into the United States via Mexico, rented her an apartment in Los Angeles, and explained that she would be working as a prostitute, charging $200 per hour, of which she could keep $30. When Zimina had refused, Rashkovski and Kozlova had screamed vulgarities at her and threatened to have her put in jail for illegal immigration. Unable to speak English or travel without their permission, Zimina was trapped in their employ until April 1999, when she escaped with the help of a friend.

To recruit more Russian women, Rashkovski and Kozlova flew to Moscow in June 1999 and held meetings to promote the limitless job opportunities in the dynamic field of prostitution in the United States. To the attendees at one of the meetings, which included Vlada Toulousheva and Evgenia Tsimbal, Rashkovski explained that although it was unlikely he could get visas for all of the women, he would make their travel arrangements and pay for the plane tickets. The women would repay him with the money they made in his "established prostitution business"—$60 per hour of the $200 they would charge.

Seizing upon the plan as the way to escape their precarious circumstances in Russia, Toulousheva and Tsimbal flew into Mexico with three other women in August 1999. Rashkovski met them at the Grand Hotel in Tijuana and prepped them for a late night border crossing, instructing them to dress as though they had been at a discotheque, to appear drunk, and to

answer "Yes, U.S." to any questions asked by border officials.

Shortly after midnight on August 9, Rashkovski, Toulousheva, and Tsimbal attempted to drive into the United States in Rashkovski's car. When both women claimed American citizenship but could not speak any English, immigration agents grew suspicious and detained Rashkovski.

A federal grand jury indicted Rashkovski and Kozlova for conspiracy to bring in illegal aliens for commercial gain, 8 U.S.C. § 1324(a)(2)(B)(ii); importation of aliens for immoral purposes, 8 U.S.C. § 1328; persuading, inducing, or enticing foreign travel for the purposes of prostitution, 18 U.S.C. § 2422(a); and aiding and abetting, 18 U.S.C. § 2.

Following trial, the jury found Rashkovski and Kozlova guilty of all counts. The court sentenced Rashkovski to concurrent terms totaling 60 months. Kozlova did not appear for sentencing and remains a fugitive.

## II. Discussion

Two counts of the indictment relating to Toulousheva and Tsimbal charged Rashkovski with violating 18 U.S.C. § 2422(a), which states:

> Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, ... to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

Rashkovski argues that insufficient evidence supported his convictions under these two counts because: (1) he did not persuade, induce, entice, or coerce Toulousheva and Tsimbal to travel because they willingly traveled to the United States; and (2) they had no real intention of being prostitutes.

We review claims of insufficient evidence de novo. *United States v. Antonakeas,* 255 F.3d 714, 723 (9th Cir.2001). There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Crawford,* 239 F.3d 1086, 1092 (9th Cir. 2001).

At trial, both women testified that they attended the recruiting meetings voluntarily. Tsimbal sought to leave "criminal Moscow" behind, while Toulousheva viewed America "as a country where you can feel safe." Both testified that, while they viewed Rashkovski's scheme as a prime opportunity to flee Russia for the United States, they did not plan to work as prostitutes once they arrived in the country.

In light of this testimony, Rashkovski first contends that because the women desired of their own accord to travel internationally, he could not have persuaded, induced, enticed, or coerced them to do so, as required under § 2422(a). Upon examination of the relevant language, we conclude that Rashkovski's argument is at odds with the plain meaning of the statute.

"Under the rules of statutory construction, '[t]he plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results.'" *United States v. Leyva,* 282 F.3d 623, 625 (9th Cir.2002) (quoting *United States v. Daas,* 198 F.3d 1167, 1174 (9th Cir.1999)), *cert. denied,* 122 S.Ct. 2374 (2002). The dictionary definition of "persuade" is "to move by argument, entreaty, or expostulation to a belief, position, or course of action"; "induce" is "to move by persuasion or influence"; and "entice" is "to attract artfully or adroitly or by arousing hope or desire: tempt."

*Merriam–Webster's Collegiate Dictionary* (2002); *see Batsell v. United States,* 403 F.2d 395, 399 (8th Cir.1968) (The words "inducement," "persuasion," and "enticement" in § 2422 are of common usage and meaning.). None of the statutory language requires Rashkovski to have created out of whole cloth the women's desire to go to the United States; it merely requires that he have convinced or influenced Toulousheva and Tsimbal to actually undergo the journey, or made the possibility more appealing. Thus, it is not significant that Toulousheva and Tsimbal had pre-existing wishes to leave Russia for the United States, especially considering that they never acted upon those desires until Rashkovski made it attainable.

■ The testimony showed that Rashkovski offered to make and pay for the necessary travel arrangements to allow Tsimbal and Toulousheva to go to the United States. That the women accepted Rashkovski's offer and thereafter traveled with his assistance is sufficient evidence from which a rational jury could conclude that Rashkovski persuaded, induced, or enticed them to travel. *See United States v. Pelton,* 578 F.2d 701, 713 (8th Cir.1978) (concluding that defendant had induced a woman to travel by making her travel arrangements, even though the woman had been willing to travel to work as a prostitute). "When an offer to travel interstate for purposes of prostitution elicits a positive response from a woman to whom it is made, it constitutes a requisite inducement under the statute." *Id.*

■ Rashkovski next contends that he could not have induced or enticed the women to travel "to engage in prostitution" under § 2422(a) because Toulousheva and Tsimbal both declared on the stand that they had no intention of working as prostitutes once they reached the United States. However, it is the defendant's intent that forms the basis for his criminal liability, not the victims'. The question under § 2422(a) is whether Rashkovski persuaded or enticed the women to travel intending them to engage in prostitution. This is evident from *Simpson v. United States,* 245 F. 278, 279 (9th Cir.1917), in which the defendant was charged with violating section 3 of the Mann Act, 36 Stat. 825, now codified at 18 U.S.C. § 2422. *See* Act of June 24, 1948, ch. 645, 62 Stat. 683, 812 (revising and codifying the Mann Act). There, we affirmed the sufficiency of the indictment, which "charged that *the defendant's purpose* [for inducing travel] was to have the woman 'manage a house of prostitution.'" *Simpson,* 245 F. at 279 (emphasis added) (holding that the indictment set forth "the offense in the language of the statute ... with sufficient particularity"). Under § 2422(a), the relevant intent remains the defendant's. *United States v. Drury,* 582 F.2d 1181, 1184 (8th Cir.1978) ("To have committed a Mann Act violation, appellant must have knowingly persuaded the women to travel across state lines with the intention that they engage in prostitution."). Whether Toulousheva and Tsimbal themselves intended to engage in prostitution is thus immaterial to Rashkovski's criminal culpability.

■ Evidence that Rashkovski recruited Russian women for his prostitution business, coupled with Elena Zimina's testimony that Rashkovski had forced her into prostitution after bringing her into the country, sufficiently demonstrated that he intended to prostitute Toulousheva and Tsimbal when he persuaded, induced, or enticed them to travel. Because both of Rashkovski's arguments fail, we conclude that sufficient evidence supported his convictions under § 2422(a).

■ We have considered Rashkovski's contention that the district court abused its discretion in denying his motion to sever his trial from that of his wife and find it meritless. Their defenses were not

mutually antagonistic and he was not prejudiced by the joinder. *See United States v. Throckmorton,* 87 F.3d 1069, 1072 (9th Cir.1996) ("To be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant."). Moreover, his argument that the court erred in calculating his sentence by counting each alien smuggled as a separate violation of 8 U.S.C. § 1324(a)(2)(B)(ii) is foreclosed by *United States v. Gonzalez–Torres,* 273 F.3d 1181, 1189 (9th Cir.2001) (holding that the text of § 1324(a)(2)(B) "unequivocally provides that penalties are to be assessed for 'each alien in respect to whom a violation of this paragraph occurs' ").

Rashkovski's conviction and sentence are therefore

**AFFIRMED.**