19-4138-cr
*United States v. Muhammad Waqar*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

August Term, 2020

Argued: December 8, 2020     Decided: May 20, 2021

Docket No. 19-4138-cr

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

MUHAMMAD WAQAR,

*Defendant-Appellant.*

Before:

POOLER, PARKER, and LYNCH, *Circuit Judges.*

Defendant-Appellant Muhammad Waqar appeals from a judgment of conviction entered by the United States District Court for the Southern District of New York (Stein, *J.*) following his conviction by a jury on one count of attempted child enticement in violation of 18 U.S.C. § 2422(b). Waqar contends that the district court committed reversible error by failing to instruct the jury that it could not convict him unless the evidence showed that he attempted to transform

or overcome the will of his intended victim. Upon review, we conclude that the plain meaning of the statute does not support Waqar's position and, therefore, that the district court properly declined to give the requested instruction. We reject the other arguments raised by Waqar in a summary order filed together with this opinion, and accordingly AFFIRM the judgment.

--------

JONATHAN I. EDELSTEIN, Edelstein & Grossman, New York, NY, *for Defendant-Appellant.*

DANIEL G. NESSIM, Assistant United States Attorney (Anna M. Skotko, Assistant United States Attorney *on the brief*) *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Appellee.*

--------

GERARD E. LYNCH, *Circuit Judge*:

Defendant-Appellant Muhammad Waqar appeals from a judgment of conviction entered by the United States District Court for the Southern District of New York (Sidney H. Stein, *J.*) following his conviction by a jury on one count of violating 18 U.S.C. § 2422(b). That section prohibits, in relevant part, attempting to "persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense" through the use of any facility of interstate commerce. *Id.* Relying on the D.C. Circuit's 2014 decision in *United States v. Hite,*

2

769 F.3d 1154 (D.C. Cir. 2014), Waqar argues that the district court erred when it declined to instruct the jury that it could not convict him unless it found that he endeavored to transform or overcome the will of a minor.

We disagree. As we previously explained in rejecting a vagueness challenge to § 2422(b), "persuade, induce, entice, [and] coerce . . . are words of common usage that have plain and ordinary meanings." *United States v. Gagliardi*, 506 F.3d 140, 147 (2d Cir. 2007) (internal quotation marks omitted). The ordinary meanings of those verbs do not include, as a necessary element, the overbearing or transformation of another's will. Further, applying our understanding of the plain meaning of the statutory text, we conclude without hesitation that Waqar's conduct fits comfortably within the scope of the statutory prohibition. We therefore reject Waqar's assertion that § 2422(b) imposes a requirement that an individual endeavor to transform or overcome the will of his intended victim and hold that the district court did not err in declining to so instruct the jury.

We reject the other arguments raised in Waqar's appeal in a summary order filed concurrently with this opinion, and accordingly AFFIRM the judgment of conviction.

## BACKGROUND

On April 23, 2018, Waqar, using the pseudonym "Muhammad Alli," initiated a conversation with "Jenny" on an online dating network. Although Jenny's profile identified her as a 12-year-old girl (a fact that she emphasized in her conversation with Waqar), "Jenny" was, in fact, an online undercover account operated by NYPD Detective Paul Byrne as part of his work with the New York FBI/NYPD Joint Child Trafficking and Human Exploitation Task Force. Waqar soon asked Jenny to send him pictures of herself, and, after she told him that she was in eighth grade, offered to give her donuts and buy her ice cream. Waqar then asked Jenny to meet with him so that they could kiss, and then immediately asked whether she was a virgin.

The conversation took a markedly sexual turn from there. Over the course of the next hour, Waqar asked Jenny about her sexual history, implored her to send him a picture of her breasts, offered to buy her a bra, asked whether she enjoyed oral sex, and discussed the possibility that she would bleed during sex. Jenny did not discourage these overtures, and she expressed interest in meeting Waqar provided that he agree to pay her $50 cell phone bill.

4

Waqar contacted Jenny the following day and again asked her to send him a picture of her breasts, which she refused to do because she didn't know if he was "for real about paying [her] cell bill." Gov't App'x at 16. Waqar continued to contact Jenny daily over the course of the next week. Their conversations grew increasingly explicit; for example, at one point, Waqar sent Jenny pornographic images depicting adults having sex in a position that he suggested the two of them try as well. Throughout these exchanges, Waqar repeated his offers to purchase Jenny various things and to pay her cell phone bill.

On May 2, just over a week after first making contact, Waqar and Jenny made plans to meet the following day; Waqar would pay Jenny's $50 cell phone bill, and the two would have sex. During this conversation, Waqar sent Jenny a picture of a condom, which he told her he would bring to their rendezvous.

On May 3, Waqar arrived at the prearranged location, whereupon he was promptly arrested. At the time of his arrest, Waqar was carrying: (1) a condom of the same brand depicted in the photo he had sent the day before, (2) one of the cell phones that had been used to communicate with Jenny, and (3) $50, segregated from the rest of his money.

5

A grand jury in the Southern District of New York indicted Waqar on one count of using a cell phone "to attempt to persuade, induce, entice, and coerce a minor to engage in sexual activity" in violation of 18 U.S.C. § 2422(b). J. App'x at 22. Waqar pleaded not guilty and was tried before a jury. At the charge conference, Waqar's counsel, relying principally on the D.C. Circuit's decision in *Hite*, requested that the district court instruct the jury that "[t]he plain meaning, interpretation of the statute's verbs persuade, induce, entice and coerce indicate that the evidence must show that the defendant is seeking to transform or overcome the will of a minor and not merely agreeing or even arranging to have sex." *Id.* at 428-29. After hearing argument from the Government, the district court declined to give the proposed instruction, reasoning that it was contrary to our precedent. Accordingly, the district court instructed the jury that the words "persuade, induce, entice, and coerce are words of common usage and you should apply their common or every day meaning in the evidence in this case." *Id.* at 546.

The jury convicted Waqar of violating § 2422(b), and the district court sentenced him principally to the mandatory minimum term of 120 months' imprisonment. Waqar timely appealed, and we affirm.

**DISCUSSION**

The sole issue we address in this opinion is whether the district court's refusal to give Waqar's proposed instruction was error. "We review a jury instruction challenge *de novo*." *United States v. Coppola*, 671 F.3d 220, 247 (2d Cir. 2012) (citation omitted). "A defendant challenging the district court's rejection of his proposed jury instruction must show that his proposed charge accurately represented the law in every respect, and that the charge actually given, viewed as a whole, prejudiced him." *United States v. Fazio*, 770 F.3d 160, 166 (2d Cir. 2014) (citation and internal quotation marks omitted).

Waqar's proposed instruction did not accurately represent the law. Although we have yet to consider the specific argument that he now makes, we previously rejected a vagueness challenge to § 2422(b), concluding that the statutory verbs "attempt, persuade, induce, entice, [and] coerce, though not defined in the statute, are words of common usage that have plain and ordinary meanings." *Gagliardi*, 506 F.3d at 147 (internal quotation marks omitted). We further observed that "[a]lthough . . . there may be some uncertainty as to the precise demarcation between 'persuading,' which is criminalized, and 'asking,' which is not, . . . the statute's terms are sufficiently definite that ordinary people

7

using common sense [can] grasp the nature of the prohibited conduct." *Id.* As in

*Gagliardi*, we need not delineate that precise line of demarcation to decide this

case. It suffices to conclude that we reject the notion, implicit in Waqar's

argument, that "asking" does not become "persuading" until the minor being

asked has said "no," or otherwise has evidenced a determination not to engage in

sexual activity such that a defendant's effort to "persuade" can be said to have

sought to "transform" or "overcome" the minor's will. To the extent that the D.C.

Circuit's decision in *United States v. Hite* holds to the contrary, we find it

unpersuasive and decline to follow it.[1]

---

[1] We are not confident that *Hite* supports Waqar's argument in any event. The primary question presented in *Hite* was whether a defendant could be convicted under § 2422(b) based solely on communications with an adult intermediary. In answering that question in the affirmative, the D.C. Circuit joined the consensus of circuit courts that have considered that issue. *See* 759 F.3d at 1166; *see also, e.g.*, *United States v. Douglas*, 626 F.3d 161, 164-65 (2d Cir. 2010) (collecting cases). Notwithstanding, the D.C. Circuit reversed Hite's conviction after concluding that it was error to instruct the jury that "the government must only prove that the defendant believed that he could communicate with someone who could *arrange* for the child to engage in unlawful sexual activity." 769 F.3d at 1166. Some language in *Hite* is consistent with Waqar's contention that § 2422(b) criminalizes only conduct intended to transform or overcome the will of a minor, and the D.C. Circuit has once, in passing, referred to "*Hite*'s insistence that there be evidence that the defendant sought to 'transform or overcome the will of a minor,'" *United States v. Zagorski*, 807 F.3d 291, 293 (D.C. Cir. 2015), quoting *Hite*, 769 F.3d at 1162. But we are unaware of any instance in which the D.C. Circuit has relied on *Hite* to reverse a § 2422(b) conviction for insufficient evidence of a

Waqar argues, in short, that the "ordinary meaning" of each of the statutory verbs contains an element of transforming or overcoming another's will. And, to be sure, some dictionary definitions could arguably be so construed. As the D.C. Circuit observed in *Hite*, "persuade," for example, "is commonly defined as 'to induce or win over (a person) to an act or course of action; to draw the will of (another) to something, by inclining his judgment or desire to it; to prevail upon, [or] urge successfully, to do something.'" 769 F.3d at 1161, quoting Oxford English Dictionary (2d ed. 1989). Similarly, in *United States v. Broxmeyer*, we noted that the words "[p]ersuade, induce, and entice are in effect synonyms . . . [that convey] the idea . . . of one person 'leading or moving' another 'by persuasion or influence as to some action, state of mind, etc.' or 'to bring about, produce, or cause.'" 616 F.3d 120, 125 (2d Cir. 2010) (discussing 18 U.S.C. § 2251(a)), quoting The Random House Dictionary of the English Language 726, 1076 (unabridged ed. 1971). These definitions, according to Waqar, presuppose that the object of said persuasion, inducement, or enticement, is (at least initially) unwilling to undertake the course of action in question. After all, if someone

___

defendant's intent to transform or overcome the will of a minor, or for failure to instruct the jury that such an intent was required.

9

were inclined to do something, she wouldn't need to be persuaded.

But, *pace* the D.C. Circuit, Waqar's preferred definitions do not clearly support the instruction he seeks. None of the definitions cited by the D.C. Circuit, and quoted in turn by Waqar, use the words "transform" or "overcome the will." Nor do those definitions necessarily imply that the person being enticed or persuaded have formed an adverse intention before the effort to persuade or induce began. A person may "lead[ ] or mov[e] another by persuasion or influence" to take an action to which she is already predisposed or neutral.

Consider, for example, the following scenario. A woman, a campaign worker for a political candidate, approaches a man (whose political preferences she does not know and about which she does not ask) on the street and begins explaining to him why he should vote for her preferred candidate, intending to move him by her arguments to show up at the polls and vote for that candidate. No one would argue that she has not "attempted to persuade" him to do so, even if he, in fact, already planned to vote for the candidate in question. Suppose that she tells the man that she will give him $100 to vote for her candidate. As the words are commonly understood, she has undoubtedly attempted to induce or entice him to vote for that candidate. Or suppose she threatened to expose

10

embarrassing information about the man that was not widely known unless he voted as she wished. It would be clear that she had attempted to coerce him, even though he had not entered the encounter determined to vote for a different candidate. In short, attempts to persuade, induce, entice, or coerce may occur, irrespective of whether the will of the object of the persuasion needed to be overcome or transformed, or whether the persuader assumed that the person to whom the persuasion was addressed was predisposed not to agree with the proposed action.[2]

Moreover, dictionaries provide many definitions of common words, with varying degrees of nuance. It is easy to find definitions of the statutory terms that, even as abstract formulations, do not in any way reference or assume a preformed contrary intention on the part of the person to be persuaded, induced, or enticed. For example, it is self-evident that Waqar's offers of financial and other incentives were intended to "attract [Jenny to the prospect of having sex

---

[2] Note, too, that in all of the variations on our hypothetical, the actions of the campaign worker are readily distinguishable from merely "asking" the prospective voter to vote for her preferred candidate. The verbs in the statute reference the different *means* by which the actor undertakes to get the object of the request to act by deploying the various arguments, incentives, or pressures, and not to the degree of enthusiasm, indifference, or hostility the person being acted upon brings (or the actor thinks he brings) to the situation.

with him] by the offer of . . . [an] advantage." *Entice*, Oxford English Dictionary

(2d ed. 1989). Similarly, those incentives were surely intended to "influence

[Jenny] . . . to do something," namely, to meet and have sex with him. *Induce*,

Oxford English Dictionary (2d ed. 1989). Neither of these definitions presupposes

that Jenny started from a baseline opposition to engaging in sexual behavior that

needed to be "transformed" or "overcome."[3]

But this narrow focus on dictionary definitions underscores the chief

problem with Waqar's formulation, which is that it moves the locus of the offense

conduct from the intent and actions of the would-be persuader to the effect of his

words and deeds on his would-be victim. As we recognized in *United States v.*

*Joseph*, that view is incompatible with the statute's requirement that to be guilty

of attempt, the defendant must have a specific intent to persuade, induce, or

entice a minor to engage in unlawful sexual conduct. 542 F.3d 13, 18 (2d Cir.

---

[3] That is especially so in the context of an attempt, the crime with which Waqar was charged. An attempt requires proof that the defendant intended the act prohibited by the statute, and took a substantial step toward that result. *See, e.g.*, *Gagliardi*, 506 F.3d at 150. In this case, the intended object of the inducement, Jenny, did not even exist, and thus had no "will" to be transformed. It is irrelevant to liability for attempt that it would have been impossible for Waqar to succeed in persuading the fictional persona projected by the undercover officer to engage in sexual conduct. It would be equally irrelevant if Waqar unleashed his campaign of seduction on someone who was willing or even eager to be seduced.

12

2008), *abrogated on other grounds by Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008). Specifically, in *Joseph*, we held it plain error to instruct a jury that it could convict under § 2422(b) if it found, in relevant part, that the defendant "made the possibility of a sexual act with him more appealing" to a person whom he believed to be a minor because "making a sexual act 'more appealing' in the absence of an intent to entice is not a crime." 542 F.3d at 17-18.

The instruction that Waqar urges us to adopt here suffers from a similar defect: just as the *Joseph* instruction would permit a conviction if a defendant's words had the effect of persuading or enticing his victim irrespective of that defendant's intent, Waqar would have us preclude a conviction based on the intended victim's responses to the defendant's overtures, irrespective of the defendant's intent in making them. But, under § 2422(b) (and, one might note, criminal statutes in general), "it is the defendant's intent that forms the basis for his criminal liability, not the victims'." *United States v. Rashkovski*, 301 F.3d 1133, 1137 (9th Cir. 2002).

A jury applying the common and plain meanings of the statutory terms to Waqar's conduct thus could readily conclude that Waqar's communications with Jenny reflect attempts to persuade, induce, and/or entice her to engage in sexual

13

activity with him within the common meanings of those terms. Shortly after first initiating contact with Jenny, Waqar offered to give her gifts such as donuts and ice cream before gradually steering the conversation in an increasingly sexual direction. Throughout this conversation Waqar continued to offer Jenny incentives to meet – and have sex with – him; for example, immediately before he first broached the possibility of their having sex, he offered to buy Jenny a black bra. Waqar's conversations with Jenny over the course of the next eight days follow a similar pattern of his mixing offers of financial rewards and emotional appeals (like asking to be her boyfriend) with increasingly graphic discussions of sex. The day before the two were to meet, Waqar told Jenny: "[n]ext week I do sex with you an[d] I get [bra] for you. I give you money baby. U my girl[] I give you money." Gov't App'x at 34. Applying the ordinary meaning of the statutory words to these facts, a reasonable jury would not need a dictionary to conclude beyond a reasonable doubt that Waqar's conduct toward Jenny was intended to induce, persuade, and/or entice her to have sex with him regardless of whether she expressed (or felt) reluctance, indifference, or, for that matter, enthusiasm at the prospect of doing so.

Waqar's proposed instruction, by requiring an intention on the defendant's

part to overcome or transform another's will, demands far more than any normal understanding of what it means to attempt to persuade or entice another to take a particular action. Waqar did not merely "ask" Jenny to have sex with him: he engaged in a week-long campaign to encourage her to agree to do so by deploying arguments and inducements, temptations and rewards, and efforts to arouse desire by the transmission of pornography. We have no doubt that this evidence was more than sufficient to permit a jury, applying the "plain and ordinary" meanings of the words of the statute, to find him guilty beyond a reasonable doubt. The instruction requested by Waqar would divert the jury and confuse the issue, by having them ask whether Waqar believed that Jenny had a pre-formed opposition to engaging in sexual acts. That is not required by the statute.

Our conclusion, finally, has a solid foundation in both our precedent and in the decisions of our sister circuits. Although we have not had occasion to consider Waqar's theory in the context of an instructional challenge, we have previously rejected it when asserted under the rubric of evidentiary sufficiency. In *United States v. Brand*, for example, we affirmed the defendant's § 2422(b) conviction after concluding that he had engaged in classic "grooming" behavior

by "making the initial contact" with his victims and "continuously steer[ing] the conversation in the direction of sexual contact," even though it was the undercover government agent, and not the defendant, who initially broached the topic of sex, and the agent expressed no hesitation about having sex with the defendant. 467 F.3d 179, 203 (2d Cir. 2006). Further, this "grooming" behavior – much of it similar to Waqar's conduct in this case – is consistently understood by our sister circuits as falling squarely within the scope of § 2422(b)'s prohibitions, irrespective of whether it is met with any resistance. *See United States v. Howard*, 766 F.3d 414, 423-24 (5th Cir. 2014) (collecting cases); *see also United States v. Rutgerson*, 822 F.3d 1223, 1233-34 (11th Cir. 2016) ("That many individuals might have sought to induce or entice the same underage prostitute to engage in sex for money – even if each one was successful – does not immunize Rutgerson from prosecution under § 2422(b)."). In other words, as the Eighth Circuit recently concluded in a decision rejecting a sufficiency challenge premised on *Hite*, both our precedent and the decisions of our sister circuits "make[] clear that a defendant can be found to 'persuade' or 'entice' even a seemingly 'willing' minor." *United States v. Zupnik*, 989 F.3d 649, 654 (8th Cir. 2021).

Accordingly, we hold that 18 U.S.C. § 2422(b) imposes no requirement that

an individual endeavor to "transform or overcome" the will of his intended victim. We therefore reject Waqar's contention that the district court erred in refusing to so instruct the jury in this case. Further, although we do not undertake to require any specific formulation for jury instructions in § 2422(b) cases, we repeat our prior observation that the statutory verbs are ones of common usage; in most cases, it will suffice to instruct jurors to apply the plain and ordinary meanings of those words, as the district court instructed the jury to do in this case.

## CONCLUSION

For the reasons stated herein and in the accompanying summary order, the judgment of the district court is AFFIRMED.