06-5911-cr

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2007

Heard: May 13, 2008                    Decided: September 9, 2008

Docket No. 06-5911-cr

- - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,
     Appellee,

          v.

DENNIS JOSEPH,
     Defendant-Appellant.
- - - - - - - - - - - - - - - -

Before: NEWMAN, WALKER, and SOTOMAYOR, <u>Circuit Judges</u>.

     Appeal from the December 21, 2006, judgment of the United States District Court for the Southern District of New York (Richard Owen, District Judge), sentencing the defendant to a term of 97 months for violating 18 U.S.C. § 2422(b).  Defendant contends primarily that the jury charge permitted conviction on an invalid alternate basis.

     Conviction vacated and case remanded for a new trial.  Judge Walker dissents with a separate opinion.

<div style="margin-left:40%">

Nathaniel Z. Marmur, New York, N.Y. (Paul Shechtman, Stillman, Friedman & Shechtman, P.C., New York, N.Y., on the brief), for Defendant-Appellant.

Maria E. Douvas, Asst. U.S. Atty., New York, N.Y. (Michael J. Garcia, U.S. Atty., Anjan Sahni, Diane Gujarati,

</div>

Asst. U.S. Attys., New York, N.Y., on the brief), for Appellee.

JON O. NEWMAN, <u>Circuit Judge</u>:

This criminal appeal primarily concerns a claim that a jury charge permitted conviction on an invalid alternate basis. Defendant-Appellant Dennis Joseph appeals from the December 21, 2006, judgment of the District Court for the Southern District of New York (Richard Owen, District Judge) sentencing him to 97 months after a jury found him guilty of using his computer to send messages on the Internet to entice an individual he believed to be an underaged girl to engage in unlawful criminal sexual activity, in violation of 18 U.S.C. § 2422(b). On appeal, Joseph contends that he did not receive a fair trial for several reasons, including denial of an expert witness, denial of an opportunity to rebut prosecution evidence, and an erroneous jury charge. We conclude, primarily because of significant error in the jury charge, that a new trial is required.

## Background

Joseph is 40 years old, married, and has a six-year-old child. In August 2005, he was arrested for using the Internet to solicit a person he believed to be a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). After a seven-day trial in April 2006, a mistrial was declared when the jury was unable to reach a verdict.

The evidence at the retrial included the following. In July 2005, Joseph visited an Internet chat room called "I Love Older Men," where he initiated a conversation with an individual with the screen name[1] "Teen2Hot4U," who purported to be a 13-year-old girl named "Lorie." "Teen2Hot4U" was in fact Stephanie Good, a 55-year-old woman who spends 20 to 50 hours a week surfing the Internet for those she believes to be sexual predators and reporting her finds to the FBI. See United States v. Brand, 467 F.3d 179, 183 (2d Cir. 2006) (reporting Ms. Good's Internet chat-room conversations using the screen name "Sara").

Using the screen name "DSax25" and describing himself as a 40-year-old professional musician, Joseph had approximately 50 instant message and email chats with Good, almost all of which he initiated. Most of the conversations were explicitly sexual and mentioned sexual acts that Joseph stated he would perform with "Lorie." In one conversation Joseph mentioned he would be interested in meeting "Lorie" and asked, "[L]et's just say...hypothetically.....where would

---

[1]"A screen name is an appellation used to identify oneself in a chat room or when sending instant messages to another computer user. Although it can be the user's real name, it is more often a pseudonym." United States v. Mitchell, 353 F.3d 552, 554 n.3 (7th Cir. 2003).

you want to meet?"  "Lorie" sent Joseph a picture, depicting Good at age 13 or 14 years.

In a subsequent message, "Lorie" referred to her friend "Julie," who was in fact FBI agent Austin Berglas posing as a 13-year-old girl. See Brand, 467 F.3d at 183 (reporting Berglas posing as "Julie"). Joseph asked for a picture of "Julie" and suggested that "Lorie" give "Julie" his email address.  "Lorie" later provided Joseph with "Julie's" screen name.  Joseph then began exchanging messages with "Julie," describing sexual acts he wanted to perform with her.

On August 25, 2005, Joseph initiated contact and told "Julie" that he wanted to see her and "Lorie."  On August 30, he again contacted her and described sexual activity the two might enjoy.  That same day he emailed "Julie," indicating that he planned to be at Franklin Street in Manhattan the following day and asked "Julie" to let him know if that date worked for her.  The two exchanged various emails coordinating the meeting the next day.  On August 31, Joseph sent his final message to "Julie," and they agreed to meet outside the Franklin Street Station Café.  "Julie" asked if he was "really gonna be there" because she did not "wanna be standing there waiting," and Joseph replied, "I can't promise anything cause I'm still nervous and I don't know how I will actually feel when I see you.  Is that Okay?" The remainder of the conversation, as reported by Berglas during his testimony, was as follows:

-4-

["Julie"]: No.

[Joseph]: Not okay?

["Julie"]: You may not show up?

[Joseph]: I promise I will show up. I promise.

["Julie"]: So what do you mean? You may not like me?

. . .

[Joseph]: I just may have a problem because I am so much older than you

["Julie"]: Oh

[Joseph]: But I will definitely be there and we can see then. Okay?

Later that morning, Joseph showed up at the café, which was under surveillance, and was promptly arrested while looking into the window. He was not carrying a condom or a lubricant.  Cf. Brand, 467 F.3d at 186 (Internet enticement defendant arrested with three condoms in glove compartment of his car).

After his arrest, Joseph was advised of his rights and spoke with the arresting agents.  He told Berglas that he came downtown "to meet a . . . girl that he had met while chatting on the [I]nternet." Joseph stated that "you really don't know the actual age of people you talk to on the [I]nternet," but indicated that he believed "Julie" was 13 years old at the time he showed up at the café. Id.  Joseph stated he had no intention of having sex with "Julie" but wanted to warn her that "talking to older men on the internet about having sex was

-5-

dangerous."

The defense sought to portray Joseph as an individual with a proclivity for muscular women who never knowingly communicated with a minor over the Internet and primarily used the Internet for role-playing purposes. His wife, Yana, testified about Joseph's interest in muscular woman and his Internet addiction to sexual fantasy role-play. On cross-examination, Yana testified that her husband was a member of an Internet group called "Muscleteens," which, according to her, solicits pictures of muscular girls between the ages of five and twenty.

Joseph testified on his own behalf. He explained that "DSax25" was "an idealized version of what . . . Dennis Joseph can't do but can on the [I]nternet." He testified that the he browsed the Internet looking for female bodybuilders. He introduced 25 profiles of the people on his buddy list,[2] 21 of whom were adult female bodybuilders.

Joseph stated that when he encountered "Lorie" in what he believed was an "adult sex theme[d]" chat-room, he was convinced that she was an adult posing as a teenager. He claimed that her familiarity with sexual terminology convinced him that she was part of a "make-believe, pretend world." When "Lorie" offered to introduce

_____

[2]A buddy list is a list of an instant messenger's "friends," and shows a user which of his buddies are online when he is.

-6-

him to "Julie," he played along.  Joseph believed "Julie" was also a sexually experienced adult engaged in role-playing.  Joseph testified that his belief was confirmed when "Julie" sent him a picture of herself with long nails because he found it difficult to believe that someone with long nails would be a gymnast.  The Government had earlier presented a witness who testified that, as a teenager, she had done gymnastics with long fingernails.

Joseph also testified that after arranging the meeting with "Julie," he worried that he might have misjudged the situation.  Julie's angry tone when he couldn't "promise anything" made him think that she might, in fact, be a teenage girl.  Joseph claimed that he thought to himself "what am I going to do if [she] actually is a minor" and that he decided that if she was in fact a minor he was going to take her into the café, sit down, eat lunch, and explain to her that he was pretending because he thought she was an adult and that he was way too old to be involved with her.

On cross-examination the Government asked Joseph about his participation in the "Muscleteens" group, which his wife had mentioned during her cross-examination.  Joseph admitted joining the site, which describes itself as a group encouraging users to post pictures of girls "between 5 and 18" showing off their muscles.  He claimed that when he joined there was a picture on the front cover of a bodybuilder who was 19 or 20, and that he did not recall seeing pictures of

younger girls.  He also stated that the few times he looked at the site, the pictures had changed, and that each time they were "predominately 19, 20, 21 and maybe 18-year-old bodybuilders."  Joseph claimed that he stopped visiting the site when "it started to change."

On rebuttal, the Government called Special Agent Sean Watson of the FBI who testified that in June, 2006, shortly before Joseph's trial, Watson had joined the Muscleteens group in an undercover capacity and had viewed all of the pictures posted in that group before August 31, 2005, the date of Joseph's arrest.  Over a defense objection, the prosecution was permitted to introduce pictures of young girls from the group.

The evidence thus framed for the jury the issue of whether Joseph enticed "Julie" to meet with him for the purpose of engaging in unlawful sexual conduct with a person he thought was a minor, or whether, as he claimed, he was engaged only in role-playing, met her to determine her true identity, and had decided not to have any involvement with her if she turned out to be a minor.  By their verdict, the jury obviously rejected his defense.

## Discussion

The Appellant seeks a retrial because of an alleged error in the jury charge and several evidentiary rulings claimed to have  denied him a fair trial.

I. Jury charge

-8-

Joseph contends that the trial judge committed reversible error by giving a jury charge that permitted a conviction on either of two bases, one of which is not an offense. The indictment charged a violation of 18 U.S.C. § 2422(b) by using a facility of interstate commerce to "persuade and entice" a person under 18 to engage in sexual activity that constitutes a criminal offense.

The District Judge instructed the jury on each of the three elements of the crime: (1) use of a facility or means of interstate commerce; (2) use of the Internet to knowingly attempt to persuade or entice a person whom the defendant believed to be under 18 years of age; and (3) that if sexual activity had occurred, the defendant could have been charged with a crime under New York Law. The Appellant challenges the instruction elaborating on the "enticing" element:

> [T]he second element the Government must prove beyond a reasonable doubt is that the defendant used the [I]nternet to knowingly attempt to persuade or entice a person who the defendant believed to be under the age of 18 years to engage in any sexual activity.
>
> . . .
>
> Now, as for the terms "persuading" and "[e]n[t]i[c]ing," I charge you that these words are common usage and should be given their common meaning. Persuade means to move by argument or entreaty or expostulation to a belief, position, or course of action--wow, that is a mouthful. The term "entice" means to wrongfully solicit, persuade, procure, allure, attract, coax, or seduce, or to lure, induce, attempt, incite, or persuade a person to do a thing.
>
> I instruct you, the government does not need to prove that the defendant attempted to wholly create desire where such

-9-

desire never existed.  The government only needs to show, beyond a reasonable doubt, that the defendant attempted to convince or influence the person he believed was a 13 year old girl to engage in a sexual act with him, or made the possibility of a sexual act with him more appealing.

(emphasis added)

The defendant objected to the italicized portion of the "enticing" element at both trials and renews his claim on appeal.[3]

_____

[3]The Government contends that Joseph did not object at trial to the alternative language, "or made the possibility of a sexual act with him more appealing," and only wanted the language amplified to include the words "with him," which had not been in the proposed charge.  We disagree.

At the charge conference, defense counsel challenged the "more appealing" language four times.  First, he made clear his objection to the "more appealing" language by pointing out that under the charge "if he just makes the idea of sex more appealing, he could be convicted of a crime which could be just pure cybersex without any intent to induce or persuade.  And that is not covered by the statute."  The "more appealing" language, he argued, "covers a wide variety of noncriminal conduct."  Next, when the trial judge read the portion of the charge from the prior trial, which included the "more appealing" language, defense counsel repeated his objection and

-10-

additionally complained that the language did not require a finding of sexual conduct committed with the defendant.  He stated: "That is their enticement charge, which, to me, your Honor, covers noncriminal conduct and lowers the burden of proof and doesn't mention anything about having sex with him." (emphasis added) Then, for a third time, he argued against the "more appealing" language by stating: "And that charge, as it is read right there[,] basically says, if you use a computer to have these kind[s] of conversations and you make sex more appealing, that is a crime, regardless whether it is with him, regardless of anything else." (emphasis added) By adding the emphasized words defense counsel made clear that even if the sexual conduct was stated to be more appealing "with him," the "more appealing" language, as he had previously stated, remained unlawful. Finally, after the words "with him" were added, defense counsel made clear that this addition met one objection but did not meet his more basic point that the "more appealing" language provided an alternative basis for conviction without proving enticement.  He stated, "[T]hat covers that one piece of it.  The other piece is that I think the charge, as given, lowers the burden of proof and basically says that you don't have to persuade or entice."

The fact that we recite these four instances of objection to the

-11-

Where an instruction defining one of two alternative grounds is legally erroneous, a court must reverse unless it can determine with absolute certainty that the jury based its verdict on the ground on which it was correctly instructed. See Griffin v. United States, 502 U.S. 46, 58-60 (1991); Wright, Federal Practice and Procedure, § 485, at 382 n.16 (2000).

"[A] conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion." Brand, 467 F.3d at 202. Most of the jury instruction on the "enticement" element properly reflects the required focus on attempting or intending to entice. The instruction states that the Government need show only "that the defendant attempted to convince or influence the person he believed was a 13 year old girl to engage in a sexual act with him[.]" However, the alternative basis for conviction in that instruction--"or made the possibility of a sexual act with him more appealing"--does not reflect the requirement of an intent to entice. Indeed, by providing the "more appealing" formulation as an alternative to the

erroneous "more appealing" language one at a time does not mean that we have viewed them "in isolation," as our dissenting colleague suggests. See dissenting op. at [4]. Indeed, their combined effect makes clear the force of defense counsel's objection.

-12-

"convince or influence" language, which had previously been explained as examples of "enticing," the challenged language permitted conviction even if Joseph did <u>not</u> intend to entice "Julie" into engaging in a sexual act with him.

Joseph sought to defend the charge against him by claiming that he was only engaging in cybersex conversation (simulating sex via sexual communication over the Internet), without any intent to entice "Julie" to engage in sexual conduct with him. He claimed that he agreed to meet her only to see if she was an adult role-player or really a child, and that, if she turned out to be a child, he would do nothing further. Of course, the jury did not have to credit his explanation, and the portions of his conversations that could be understood as intended to make the possibility of a sexual act with him "more appealing" were evidence supporting an inference that he did intend to entice her. But the offense remains "enticing," and making a sexual act "more appealing" in the absence of an intent to entice is not a crime.[4] If jurors thought that Joseph only wanted to make "Julie" think that sexual conduct with him would be appealing, but did not intend to entice her to engage in such conduct with him, they would have convicted him for having cybersex conversation, which is

_____

[4]Cybersex conversation constituting the transfer of "obscene matter" via the Internet to a person under 16 might well violate 18 U.S.C. § 1470, but Joseph was not charged with that offense.

not a crime, but not for violating section 2242(b).

The risk of an improper conviction based only on the "more appealing" formulation was heightened by the Government's summation. First, the prosecutor told the jury that "the defendant wanted Julie to think that engaging in a sexual act with him would be appealing and enticing. And that, ladies and gentlemen, is a federal crime." Although the word "enticing" was used, it was used to reflect the effect on "Julie," not whether Joseph's intent was to entice. See United States v. Dhingra, 371 F.3d 557, 567 (9th Cir. 2004) (emphasizing that focus of section 2422(b) is on the defendant, not the victim); United States v. Rashkovski, 301 F.3d 1133, 1137 (9th Cir. 2002) (Under section 2422, "it is the defendant's intent that forms the basis for his criminal liability, not the victims'.").

Then the prosecutor went further and invited the jury to rely solely on the "more appealing" alternative in the charge. She told the jury: "The crime that he's been charged with is enticement, that he was attempting to persuade or entice a minor into sexual activity. As I expect the judge to instruct you, that means the government need only show that the defendant attempted to make the possibility of a sexual act with him more appealing to someone he thought was a minor." Trial Transcript 1048-49 (emphasis added). In fact, that was not all that the Government needed to show.

The "more appealing" formulation apparently derives from language

in <u>United States v. Rashkovski</u>, 301 F.3d 1133 (9th Cir. 2002), which the Government cited to the District Court in support of its request to include this formulation. In <u>Rashkovski</u>, a defendant convicted of enticing women to come to the United States from Russia for the purpose of prostitution challenged the sufficiency of the evidence on the ground that the women wanted to leave Russia of their own accord. <u>See</u> <u>id.</u> at 1136. The Ninth Circuit affirmed the conviction for violating 18 U.S.C. § 2422(a) because the defendant had offered to make and had paid for the women's travel, and they had accepted his offer and traveled with his assistance. <u>See</u> <u>id.</u> at 1137. "Enticement," the Court stated, "merely requires that [the defendant] have convinced or influenced [the women] to actually undergo the journey, or made the possibility more appealing." <u>Id.</u> There is no indication that the "more appealing" formulation was included in the jury charge at all, much less as an alternative to a required finding of enticement. We agree with the Ninth Circuit that making a possibility more appealing can be evidence of enticement, but we do not read that Court's opinion as a ruling that doing so can be a basis for conviction under either subsection of section 2422 in the absence of enticement. <u>See</u> <u>United States v. Tykarsky</u>, 446 F.3d 458, 473 (3d Cir. 2006) ("'persuade,' 'induce,' 'entice," and 'coerce' . . . have a plain and ordinary meaning that does not need further technical explanation"); <u>United States v. Kaye</u>, 451 F. Supp. 775, 783 (E.D. Va.

-15-

2006) (convicting defendant of violating section 2422(b) based on plain meaning of "entice" without regard to the "more appealing" formulation from <u>Rashkovski</u>).

Because the jury charge permitted conviction on an invalid basis and because the risk that the jury grounded its verdict on that basis is not insubstantial, the defendant is entitled to a new trial.[5]

---

[5]Our dissenting colleague, believing the error not to have been preserved, declines to find plain error because he views the evidence of guilt as "conclusive." Dissenting op. at [16]. Even if the error had not been preserved, the test for affirming, notwithstanding submission to a jury of an invalid legal basis for conviction, is not whether there is conclusive evidence of guilt under the valid basis. A verdict must be set aside where it "'is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.'" <u>Griffin</u>, 502 U.S. at 52 (quoting <u>Yates v. United States</u>, 354 U.S. 298, 312 (1957)); <u>see</u> <u>United States v. Foley</u>, 73 F.3d 484, 494 (2d Cir. 1996) (conviction reversed for plain error where court "unable to determine" whether finding of guilt rested on valid or invalid basis); <u>United States v. Scotti</u>, 47 F.3d 1237, 1246 (2d Cir. 1995) (order for new trial affirmed "[b]ecause the jury may have reached its verdict" on invalid basis).

II.  Evidentiary rulings

Since the case must be retried, we comment briefly on two evidentiary rulings, challenged on appeal, that are likely to arise on retrial.

(a)  "Muscleteens" photos.

The Appellant contends that it was error for the prosecution to introduce a group of photos of young girls displayed on an Internet website called "Muscleteens,"[6] although the main objection is that once

Our dissenting colleague relies on United States v. Skelly, 442 F.3d 94 (2d Cir. 2006).  The error in Skelly was the submission of an incomplete charge on a valid alternative legal theory, not, as here, the submission to the jury of an invalid alternate basis for conviction that did not state a criminal offense.  Moreover, because the properly charged basis in Skelly "occupied the entirety of [the prosecution's] opening statement and all but a few remarks in its closing statement, " id. at 99, we were able to conclude that it was "overwhelmingly likely that any reasonable juror would have convicted on the basis of the Government's primary theory." Id.  In the pending case, we cannot possibly reach that conclusion in light of the Government's summation urging conviction "solely" on the invalid basis.

[6]These photos had not been introduced at the first trial, which resulted in  a mistrial.

-17-

the photos were in evidence, the defense was unfairly prevented from showing that Joseph had not looked at them.

Joseph testified that he had joined numerous Internet member group concerned with bodybuilding, including one called "Muscleteens." He indicated that this site "was made for young girls to show off their muscles" and acknowledged that a document describing the site stated that pictures could be posted of girls between 5 and 18.  He said that "[t]he pictures change, some weekly, some monthly"; that when he joined the group, the picture on front of group's site was an adult bodybuilder; that he normally looked at photos of 18-21-year-olds; and that when the site "started to change" he "didn't go back and visit" anymore.

At the conclusion of the defense case, the prosecution indicated it wanted to call an FBI agent to introduce photos from the Muscleteens group for the purpose of rebutting Joseph's testimony that the photos were predominately of 18- and 19-year-old girls.  Defense counsel argued that the images were "remarkably prejudicial" and that there was nothing "to suggest to the jury that [Joseph] had looked . . . at all this stuff."  The prosecutor responded, "That's not what we're suggesting," and argued that the photographs should be admitted to rebut Joseph's testimony that Muscleteens "had predominately pictures of 19- to 20-year-old girls."  The Judge overruled the defense objection and allowed the prosecution to introduce the

-18-

pictures.  Many of the photos appeared to be girls under 18.

On cross-examination, defense counsel sought to ask Watson if there was any evidence that Joseph had looked at the Muscleteens photos that Watson had introduced.  The Judge sustained the prosecutor's objection and stated, "The subject matter is not to be explored."

Having introduced the photos for the limited purpose of challenging Joseph's credibility on one point and disclaimed any broader purpose, the prosecution then argued in summation that the photos were "devastating evidence of the defendant's predisposition" to entice young girls.[7]  When defense counsel sought to respond in his summation that there was no evidence that Joseph had ever looked at the Muscleteens photos, the Court cut off the argument, stating that "[Watson] was not proffered for more than one issue, and that was all

_____

[7]Having told the jury that the photos were "devastating evidence," the Government is somewhat disingenuous in now arguing that any error in admitting them was harmless.  The prosecutor also engaged in dubious conduct by inviting the jury to consider "why [defense counsel] got so excited about these photos."  Cf.  United States v. Gonzalez, 488 F.2d 833, 836 (2d Cir. 1973) (reversible error found where prosecutor's derogatory remarks about defense counsel's objection coupled with statements in summation prejudiced defendant).

-19-

that the court will permit you to inquire about.  So don't go there."

Although admission of the Muscleteens photos was not erroneous, if they become relevant at a retrial, the defendant must be accorded an opportunity to present evidence that he did not view them.

(b)  Expert Testimony.  Also likely to recur at retrial is the issue of whether the defendant's expert witness, Dr. James Herriot, should be permitted to testify about role-playing in the context of sexually explicit conversations on the Internet.  Dr. Herriot is an Associate Professor of Clinical Sexuality at the Institute of Advanced Human Sexuality in San Francisco.  Dr. Herriot proposed to testify about a distinct culture of the Internet in which one can become a "fantasy character[]."  He would also explain the realities and motivations of online role-playing via chatrooms and email.  Dr. Herriot wrote his Ph.D. thesis on sexual communication on the Internet and had testified previously on the subject in federal court.[8]  The District Court sustained the Government's objection to Dr. Herriot's testimony, primarily on the ground of relevance.[9]

_____

[8]In a case similar to Joseph's, Dr. Herriott's testimony was admitted, over the Government's objection, and the defendant was acquitted. See United States v. Wragg, 01 Cr. 6107, docket entries nos. 86, 88, 90, 97.

[9]An issue also arose as to the timeliness of the defense's proffer.  To the extent that timeliness concerned the District Court,

-20-

Although the admission or exclusion of expert testimony is committed to the discretion of the court, see United States v. DiDomenico, 985 F.2d 1159, 1163 (2d Cir. 1993), we urge the District Court to give a more thorough consideration to the defendant's claim to present Dr. Herriot's testimony, in the event it is offered at retrial.

Dr. Herriot's field of study and experience qualified him to offer relevant testimony. He has conducted a large number of interviews and studied chat-room conversations to understand sexual behavior on the Internet. Social science "research, theories and opinions cannot have the exactness of hard science methodologies," Jenson v. Eveleth Taconite Co., 130 F.3d 1287 (8th Cir. 1997), and "expert testimony need not be based on statistical analysis in order to be probative." United States v. Long, 328 F.3d 655, 66 (D.C. Cir. 2003). "[P]eer review, publication, potential error rate, etc. . . . are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology of theory behind it." United States v. Hankey,

there may have been a misunderstanding of Fed. R. Crim. P. 16(b)(1)(C) since the Government made no request for disclosure of defense experts. In any event, a timeliness issue is not likely to arise at retrial.

203 F.3d 1160, 1169 (9th Cir. 2003).  In such cases, the place to "quibble with [an expert's] academic training" is "on cross-examination" and goes to his "testimony's weight . . . not its admissibility." McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995).

To the extent that the District Court was concerned that Herriot's testimony would rely on hearsay, that would not be a valid objection. See Fed. R. Evid. 703 ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.").  Social science experts commonly base their opinions on interviews.

Dr. Herriot's opinions appear to be highly likely to assist the jury "to understand the evidence." Fed. R. Evid. 702.  Defense counsel represented that Dr. Herriot

> will testify that . . . [a] major component of the entertainment on the Internet is the rapid repartee, in addition to having imaginative fun.  When engaging in Internet role-play, people love to experiment with their personas. Typically, people weave a bit of truth about themselves with a great deal of imagination and/or exaggeration.  The Internet presents [a] competitive entertainment. . . . Sexually explicit conversations tend to drive the chatting relationship, and are fueled by the anonymity of the created personas. . . . Often, chatters become curious about who is "behind the screen."  There are many methods chatters use to "de-mask" the other participant: such as asking for a photograph, attempting a phone conversation, asking for information that can be independently verified or even attempting to meet in a public space.

Although some jurors may have familiarity with Internet messaging, it is unlikely that the average juror is familiar with the role-playing activity that Dr. Herriot was prepared to explain in the specific context of sexually oriented conversation in cyberspace. Many prospective jurors at Joseph's trial acknowledged that they had never visited a chat-room, and professed no understanding of what occurs there. Obviously a jury would not have to accept Joseph's claim that he planned only to meet "Julie" to learn who she was and that he lacked any intention to engage in sexual conduct with her, but the frequent occurrence of such "de-mask[ing]" of chat-room participants might provide support for his defense.

Numerous courts have upheld the admission of expert testimony to explain conduct not normally familiar to most jurors. See, e.g., United States v. Hayward, 359 F.3d 631, 635 (3d Cir. 2004) (modus operandi of child molesters); United States v. Alzanki, 54 F.3d 994, 1005-06 (1st Cir. 1995) (tendency of abuse victims to remain with their abusers); United States v. Azure, 801 F.2d 336, 340 (8th Cir. 1986) (inability of children to distinguish truth from fantasy). Dr. Herriot's testimony would seem to be similarly relevant.[10]

_____

[10]Our dissenting colleague sees little need for Dr. Herriot's testimony because the role-playing explanation for the defendant's conduct was adequately presented by the defendant's own testimony. See

-23-

Conclusion

Primarily because the jury was permitted to convict on an invalid legal basis, the conviction may not stand.  The conviction is vacated, and the case is remanded for a new trial.

---

dissenting op. at [21].  However, when the Government implores a jury to find the defendant and his explanation not credible, we think the presentation of that explanation from a qualified expert would be significant, especially where the explanation is not one with which jurors are likely to have familiarity.

USA v. Joseph
No. 06-5911-cr

JOHN M. WALKER, JR., Circuit Judge, dissenting:

I disagree with the majority's conclusion that Joseph objected to the "more appealing" language at trial and therefore preserved that challenge for appellate review. Even if Joseph initially raised such an objection — and I do not believe he did so with sufficient clarity or particularity — the record shows that by the end of the charge conference, he had abandoned it.

Because Joseph did not preserve his challenge at trial, we should review that claim for plain error, United States v. Cohen, 427 F.3d 164, 172 (2d Cir. 2005), "which is a very stringent standard requiring a serious injustice or a conviction in a manner inconsistent with fairness and integrity of judicial proceedings," United States v. Walsh, 194 F.3d 37, 53-54 (2d Cir. 1999) (internal quotation marks and citation omitted). Under the plain error standard, Joseph bears the burden of showing that he was prejudiced, United States v. Logan, 419 F.3d 172, 179 (2d Cir. 2005), but he cannot do so because there was conclusive evidence of his guilt so that any error in the jury charge did not "affect[] the outcome of the district court proceedings," United States v. Skelly, 442 F.3d 94, 99 (2d Cir. 2006) (internal

-25-

quotation marks and citation omitted). I would therefore affirm the judgment of conviction.

I.   Joseph's Objections at the Charge Conference

The charge conference included an extensive discussion regarding the following sentence in the proposed charge: "The government only need[] show, beyond a reasonable doubt, the defendant . . . made the possibility of the sexual activity more appealing." App. at 150.5-.6. There was some additional, albeit brief, discussion of the portion of the charge defining the terms "persuade" and "entice."

Three purported objections to these instructions are at issue in this case, the first of which I believe was not properly made and, in any event, was abandoned. For ease of reference, I will refer to them as objections A, B, and C. Joseph argues, and the majority maintains, that he objected (A) to the language that the government only needed to show that Joseph "made the possibility of the sexual activity more appealing." The objection, of course, would be that this language leaves out enticement, which is a part of the crime, although enticement is charged elsewhere, including as an alternative theory in the same sentence. The government argues, and I agree, that at trial Joseph did not make objection A (to the "more appealing" language itself); he only objected (B) to the omission of the words "with him,"

-26-

which he wished to insert just before "more appealing," and (C) to the proposed charge's inclusion of explicit definitions for the terms "entice" and "persuade" as opposed to a more general allusion to the plain meaning of those terms.

On my reading of the record, the charge conference proceeded in three "phases." During phase I, Joseph made the broad-brush argument that the proposed charge, which, as the majority notes, was adapted from a Ninth Circuit case, see Maj. Op. at [14], "impermissibly lowers the burden of proof," App. at 150.2. Rather than identify specific language (such as the "more appealing" language) as erroneous, defense counsel argued that "this charge, here, covers a wide variety of noncriminal conduct." App. at 150.3 (emphasis added).

During phase II, defense counsel, the government, and the district court focused their discussion on objection B. Specifically, the defense objected that "nowhere else in the charge does it say[] that [the defendant] needs to be using [the Internet] to persuade or induce a minor to engage in a sexual act with him." Id. at 150.3-.4 (emphasis added). The government countered that "everybody understands that what we're charging him with is making the act of sexual contact more appealing with him, not with somebody else." Id. at 150.5. And the district court agreed that "[t]here is no question

. . . here what we're talking about." <u>Id.</u> at 150.7.  Objection <u>A</u> was at no point a subject of discussion in phase II.

During phase III, defense counsel affirmatively requested that the charge <u>include</u> the "more appealing" language, so that the phrase would read, "[s]exual activity 'with him' more appealing." <u>Id.</u>  The government agreed to the insertion of "with him" into the "more appealing" clause, and the district court accepted the change.  <u>See</u> <u>id.</u> at 150.8.  During this phase, defense counsel also raised objection <u>C</u> when he asked the district court to charge the plain meaning of "entice" or "persuade" without added embellishment.  <u>Id.</u>

Noticeably absent from the charge conference transcript is any explicit discussion during any phase between defense counsel, the government, and the district court of objection <u>A</u>.  Had there been such a discussion, I have little doubt that the conscientious district judge, who labored mightily over the charge, would have addressed the problem.

II.  Unpreserved Error

Applying well-established policy considerations and Second Circuit case law, it is evident that objection <u>A</u> was not preserved for two reasons.  First, even if some of defense counsel's statements could, when viewed in isolation and taken outside of their context, be

-28-

construed as objecting to the "more appealing" language itself,[1] any such objection was stated in terms too general and indistinct to apprise the district court (and the government) of the position that Joseph now asserts on appeal. Second, any such objection was plainly abandoned during phase III when defense counsel personally requested and affirmatively accepted the language, "made the possibility of sexual activity with him more appealing."

A.    Insufficient Clarity

Under Federal Rule of Criminal Procedure 30(d), "[a] party who objects to any portion of the instructions . . . must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Fed. R. Crim. P. 30(d) (emphasis added). As this court has recognized, the specificity requirement is not to be taken lightly, because it helps to ensure that the objection is squarely and clearly presented to the district court, which guarantees

---

[1]For example, the majority notes defense counsel's statement that "the jurors are thinking, if he just makes the idea of sex more appealing, he could be convicted of a crime which could be just pure cybersex without any intent to induce or persuade. And that is not covered by the statute." App. at 150.4; see also Maj. Op. at [10] n.3 (quoting this language). As I illustrate below, when this statement is viewed in its context, it is clear that the government and the district court only perceived the defense as raising objection B.

that the court of first instance has a meaningful opportunity to consider and correct any error prior to review by a court of appeals. See United States v. Weintraub, 273 F.3d 139, 145-46 (2d Cir. 2001) (applying plain error review to defendant's jury charge objection because "it was insufficiently particular to raise the question now presented and thus preserve it for appeal.  By failing to draw the district court's attention to the problem that Weintraub now complains of, the defendants deprived the district court of the opportunity to correct its putative error."); see also Skelly, 442 F.3d at 99 (conducting plain error review because "[t]he defendants . . . failed to raise a specific objection to the omission of [certain] language from the charge").

The importance of preservation for purposes of appellate review cannot be understated:

> Rule 30 provides that no party may assign as error any portion of the charge unless that party objects to it before the jury retires to consider its verdict.  The purpose of this provision is to give the trial court an opportunity to correct any error or omission in the charge before the jury begins its deliberations.  If prompt objection is made as the rule requires, the error can then be corrected.  As the Supreme Court has said:

>> Orderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error.

> The objecting party must state distinctly the matter to which it objects and the ground of its objections.  The objection must be specific enough so that the trial court can perceive the basis on which it is claimed that the instruction was erroneous.

. . . Accordingly, where the court and opposing counsel understand the defendant's position, even a vague objection should be held sufficient.

2A Charles Alan Wright, Federal Practice and Procedure § 484 (3d ed. 2000) (emphasis added) (footnotes omitted) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Conversely, where the trial court and opposing counsel do not understand the defendant's objection because it was not "state[d] distinctly," the requirements of Rule 30 have not been met.

A defendant's failure to state his objection with sufficient clarity to apprise the district court of his position results in plain error review. Cf. United States v. Lemire, 720 F.2d 1327, 1343 n.25 (D.C. Cir. 1983) ("Where, as here, the defense fails to specify sufficiently the portion of the charge to which it objects, and therefore fails to comport with Rule 30, we will reverse only if the instruction is 'plain error' — if the error causes a substantial miscarriage of justice. . . . Of course, for those objections that the defendants raised with sufficient particularity to apprise the trial judge of their dissatisfaction, we do not demand 'plain error' in order to reverse."). When, as here, an objection is made at trial but is at best ambiguous, or when the appellant's objection focuses on a different problem than that targeted on appeal, it is unpreserved. See United States v. Vasquez, 267 F.3d 79, 87 (2d Cir. 2001) ("During the charge conference, Vasquez did object to the aspect of the charge

involving heroin and cocaine trafficking, but the basis for his objection is ambiguous. . . . Where an appellant states distinctly, under Rule 30, the grounds for objecting the charge below, but urges a different ground on appeal, the objection is not properly preserved on appeal and we therefore review for plain error.  Vasquez's situation falls squarely within this rule . . . .").

In this case, if defense counsel meant to object to the inclusion of the "more appealing" language itself (objection <u>A</u>), he never made this clear at trial.  His objection was too general and imprecise to apprise the district court that the defense was seeking the deletion of the "more appealing" clause,[2] and it therefore failed to provide the

---

[2] At no point did defense counsel make explicit that he was advocating the omission of the "more appealing" language altogether. Although he specifically requested the insertion of "with him," he never requested the removal of "more appealing."  Furthermore, his objections about "cover[ing] noncriminal conduct" were more general objections to "the charge," not specific objections to the "more appealing" language.  <u>See</u> App. at 150.6 ("That is <u>their enticement charge</u>, which, to me, your Honor, covers noncriminal conduct and lowers the burden of proof . . . ." (emphasis added)); <u>id.</u> at 150.3 ("And <u>this charge</u>, here, covers a wide variety of noncriminal conduct." (emphasis added)); <u>see also id.</u> at 150.7 ("[T]he charge, as given, lowers the burden of proof . . . .).  A general objection to

-32-

district court an opportunity to correct the error. Nor did defense counsel's statements at trial adequately inform opposing counsel of the position that Joseph now asserts on appeal. The record shows that both the district court's and the government's responses throughout the charge conference addressed and focused solely on the omission of "with him," demonstrating that it was this objection — and not any broader challenge to the "more appealing" language — that was in fact conveyed to and perceived by the district court and the government.[3]

---

"the charge" does not indicate what particular aspect of the proposed enticement charge defense counsel found problematic.

[3] The majority construes defense counsel's statement, "if he just makes the idea of sex more appealing, he could be convicted of a crime which could be just pure cybersex without any intent to induce or persuade," App. at 150.4, as raising objection A. However, the responses from the government and district court — and indeed defense counsel himself — centered on the insertion of "with him," indicating that their understanding was that defense counsel was actually raising objection B:

> The Defense: But it needs to be, he needs to be attempting to induce or persuading someone he believes to be a minor to engage.

-33-

The Court:        Yeah.

The Defense:    The statute is intended that he engage in a
                sexual act with him, and —

The Government:    No, to make it more appealing to someone.

The Defense:    With him, but the way that charge —

The Government:    That's not necessarily true.  It could be
                that he makes it more sexually appealing to
                a friend of his, too, but in this particular
                case, yes, everybody understands that what
                we're charging him with is making the act of
                sexual contact more appealing with him, not
                with somebody else.

The Defense:    You have no problem to amending the charge to a
                word like that?

The Government:    To with him?

-34-

The Court:      No —

The Defense:    You need to prove that he was intended to induced or persuaded [sic], whichever, induce or entice . . . or persuade in equal contact with him.  That would be illegal.

The Government:    It is in the charge.   It is under the government's theory of the case.

The Defense:   I remember that it wasn't in there last time . . . . .

Id. at 150.4-.5 (emphasis added).

In this exchange, defense counsel never argued for the complete omission of the "more appealing" language from the charge.  Instead, he asked the government to agree to amend the charge to add "with him" to that clause.  Indeed, the suggestion to expand upon or clarify the "more appealing" clause is incompatible with the suggestion to strike it in its entirety because the former presumes retention of the "more appealing" language.  See also id. at 150.7 (The Defense: "It does no

-35-

Furthermore, during the charge conference, defense counsel had several opportunities to voice an objection to the "more appealing" language itself and make clear to the district court and to the government that he was objecting to more than just the omission of "with him."  Defense counsel, however, remained silent.[4]  Thus, any

one any harm to clarify it by adding it [i.e., "with him"] to that section of the charge . . . .").

[4]For example, during phase II of the charge conference, defense counsel said nothing during the following colloquy:

The Court:     Okay.  I'm looking at the paragraph at the bottom.  I instruct you . . . . The government only needs show, beyond a reasonable doubt, the defendant attempted to convince or influence the victim to engage in a sexual act or made the possibility of the sexual activity more appealing.

               Now, I gather that stays in, right?

The Government:    Right.

broader objection that defense counsel may have raised (or intended to raise) was not made clear to the district court, which cannot fairly be said to have been apprised of the argument. Cf. Freytag v. Comm'r, 501 U.S. 868, 895 (1991) (Scalia, J., concurring in part, joined by O'Connor, Kennedy & Souter, J.J.) ("The very word 'review' presupposes that a litigant's arguments have been raised and considered in the tribunal of first instance.").

B.    Forfeiture Through Express Acceptance

In this case, not only did the defendant fail to make a clear objection to the "more appealing" language itself, but any such argument that could be gleaned from the record was plainly abandoned during phase III of the charge conference, when defense counsel expressly accepted the "more appealing" language by requesting that the charge read, "[s]exual activity 'with him' more appealing,"[5] and

---

The Court:    Now, where does — where does the — the enticement charge go, and what does it knock out, or — or does it not knock anything out.

Id. 150.5-.6 (emphasis added).    Such passive behavior by defense counsel, wholly at odds with the defendant's argument on appeal that the specific objection to that language was raised below, is telling.

[5]That portion of the charge conference proceeded as follows:

The Government:　　Basically, you just want it to say . . . The government only need show beyond a reasonable doubt that the defendant attempted to convince or influence the victim to engage in sexual activity.  You want to add the words "with him," or made the possibility of the sexual activity more appealing.  And that covers your objection?

The Defense:　Sexual activity "with him" more appealing.

The Government:　　Two words "with him" or made the possibility of the sexual activity "with him" more appealing?

The Defense:　And that covers that one piece of it.  The other piece is that I think the charge, as given, lowers the burden of proof and basically says that you don't have to persuade or entice. [Objection C] And we're asking for the plain meaning and I don't really understand why we wouldn't just take the plain meaning of entice or

-38-

then turned the discussion to objection C. App. at 150.7. This court has held that such behavior constitutes forfeiture of the objection and will result in plain error review. See United States v. Giovanelli, 464 F.3d 346, 351 (2d Cir. 2006) (per curiam) ("[I]f a party invited the charge or affirmatively waived his position," []he has waived any right to appellate review of the charge. Giovanelli has waived his challenge to Judge Rakoff's jury charge. . . . [W]hen Judge Rakoff, responding to Giovanelli's objection, presented the parties with a revised draft jury charge that no longer included the 'natural and probable effect' language, Giovanelli's counsel acknowledged that she was happy about that particular omission. Thus, there was 'approval or invitation' of the omission (indeed, both)." (alteration, internal quotation marks, and citations omitted)); Weintraub, 273 F.3d at 146 ("Weintraub also argues that counsel properly objected during the charge conference. To the contrary, defense counsel not only did not seek the instruction that Weintraub now argues for, they affirmatively accepted the government's formulation. . . . We consequently review for plain error.").

Joseph also forfeited objection A when he failed to correct the government's and the district court's apparent understanding that he

---

persuade as Sand recommends.

App. at 150.7-.8 (emphasis added).

was only raising objection B.  After the defense expressly requested the insertion of "with him," the government replied, "if all defense attorney is asking is that we put in "with him" . . . and made the possibility of sexual activity 'with him' more appealing . . . into the charge, we don't have an objection."  App. at 150.8.  The government thereby gave defense counsel an opportunity to correct any misunderstanding and point out other objections.  Rather than raise objection A and argue that the "more appealing" language should be struck in its entirety, defense counsel reiterated objection C, that the original charge erroneously included explicit definitions for "persuade" and "entice" rather than a simple reference to their plain meaning.  He stated, "And just the other issue concerning the plain meaning."[6]  Id.  Joseph therefore forfeited any previous objection that

---

[6]Earlier during phase III, defense counsel had stated:

> And that covers that one piece of it.  The other piece is that I think the charge, as given, lowers the burden of proof and basically says that you don't have to persuade or entice.  And we're asking for the plain meaning and I don't really understand why we wouldn't just take the plain meaning of entice or persuade as Sand recommends.

App. at 150.7–.8 (emphasis added).  The majority interprets "[t]he

other piece" of defense counsel's objection as an objection that even with the addition of "with him," the "more appealing" language was erroneous because it permitted the jury to convict without finding that the defendant persuaded or enticed. See Maj. Op. at [11] n.3. In other words, the majority asserts that defense counsel continued to raise objection A, even after objection B had been resolved to his satisfaction.

As an initial matter, this reading ignores the fact that defense counsel stated that "the charge, as given, lowers the burden of proof and basically says that you don't have to persuade or entice." App. at 150.7-.8 (emphasis added). At that point in the charge conference, the district court had not yet accepted the addition of "with him." Defense counsel's statement thus referred back to the original proposed charge, and not to the charge as amended to include "with him." I therefore disagree with the majority that defense counsel was arguing that the "more appealing" language was erroneous even with the addition of "with him," and that "the other piece" of his objection was to the "more appealing" language itself.

Plainly, "the other piece" of the objection was to the expansion of the meanings of "persuade" and "entice" in the original charge —

-41-

he might have made to the "more appealing" clause itself, and, under Second Circuit case law, we should review such a challenge for plain error.

III. Applying Plain Error Review

Although Weintraub states, "[i]n general, it is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court," 273 F.3d at 145 (alteration omitted) (quoting Henderson, 431 U.S. at 154),

---

objection C. The original charge stated: "Persuade means to move by argument or entreaty or expostulation to a belief, position, or course of action . . . . The term 'entice' means to wrongfully solicit, persuade, procure, allure, attract, coax, or seduce, or to lure, induce, attempt, incite, or persuade a person to do a thing."

Here, defense counsel was arguing that the inclusion of explicit definitions or synonyms for "persuade" and "entice" lowered the burden of proof and would, in effect, allow the jury to convict without finding that Joseph persuaded or enticed. For example, under the charge, as given, the jury could convict upon finding that Joseph "wrongfully solicit[ed]" a minor. For that reason, defense counsel "ask[ed] for the plain meaning" of those terms, without any embellishment. This was the subject of his second objection (objection C), not the "more appealing" language.

-42-

the same is true when, as here, the objection that was made was insufficient to preserve the error. Under plain error review, we "revers[e] only if the error is clear or obvious and affects substantial rights. To affect substantial rights, an error "must have been prejudicial: It must have affected the outcome of the district court proceedings." United States v. Ganim, 510 F.3d 134, 152 (2d Cir. 2007). "[T]he defendant bears the burden of establishing prejudice." Logan, 419 F.3d at 179; see also United States v. Olano, 507 U.S. 725, 734 (1993) (noting that when an error has been preserved, "a court of appeals normally engages in a specific analysis of the district court record — a so-called 'harmless error' inquiry — to determine whether the error was prejudicial. [Plain error review] normally requires the same kind of inquiry, with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.")

Joseph cannot meet his burden because there was conclusive evidence to support the properly charged theory that, using the Internet, he "attempted to convince or influence the person he believed was a 13 year old girl to engage in a sexual act with him." A. 158.1; see Skelly, 442 F.3d at 99 (finding no prejudice on plain error review because the government's "primary theory [of liability] was supported by overwhelming proof"). The evidence belies any suggestion, argued by the defendant, that he was just role-playing.

In his online conversations with "Julie," the FBI agent, Joseph made numerous comments demonstrating his intent to entice her into engaging in sexual acts with him. Furthermore, on multiple occasions, Joseph made statements indicating a genuine belief (prior to the day he arranged to meet Julie) that Julie was a minor. For example, on August 22, 2005, the following online exchange took place:

Joseph:    everyone has different things that really turn them on . . . for instance . . . i love touching and kissing . . . i could caress a girl's body for hours, touching, kissing, slowly all over . . . every inch is like a delicious meal to be savored slowly

. . . .

Julie:    is that what you wanna do with us?

. . . .

Joseph:    yes, i want to touch you, caress you, kiss you . . . and show and te[]ach you things that feel good to you and me . . . but only if you want to

Julie:    u really do?

Joseph:    yes, but no one can know, because i would go straight to jail

Julie:    what do u mean?

Joseph:    you are too young for me . . . it is illegal . . . . i want to show you both how touching and kissing can be so, so hot

Supplemental App. at 86-87.

The next day, Joseph again chatted with Julie and described in explicit detail the sexual acts that he wanted to perform with her. He stated, "i kept thinki[n]g about having sex with you like that

-44-

until we both came."  When Julie asked, "do u really wanna do this in person . . . or just pretend," Joseph replied, "i really want to . . . I'm just afraid someone will find out."  App. at 95 (emphasis added).

Trying to arrange a meeting with Julie, Joseph said, "i just told lorie i have some fr[ee] time next wed in the late morning."  Julie asked, "really? . . . what do u wanna do?" and Joseph replied, "i want to see you both . . . i have to ad[]mit, I'm very nervous about it all, knowing how young you both are . . . but i am also very excited and want to see if we have chemistry . . . i know i'm going to want to have my hands all over you when i see you."  Supplemental App. at 99 (emphasis added).  This conversation followed:

> Joseph:  we need to find a private place where no one will watch us or accidentally find us
>
> Julie:  like the park?
>
> Joseph:  if there[ ]is good privacy there, sure.
>
> Julie:  w[o]uldnt it be w[ei]rd to do that out in the open?
>
> Joseph:  yes, defin[i]tely . . . not a good place for sex, but maybe some kissing and touching
>
> Julie:  ok . . . so u don't want to do sex?
>
> Joseph:  i wish we could find a private indoor place . . . not outside[]in the park (until you are 18 :-))

Id. at 100-01; see also id. at 106 ("[I] just may have a problem because i am so much older than you[.]"); id. at 107 ("[P]romise me you won't get me in trouble? . . . and have me arrested[.]").  These

-45-

conversations, among others, starkly refute Joseph's claims that when he chatted with Julie, he was simply role-playing and believed that Julie was a sexually experienced adult posing as a minor.

Because there was abundant evidence supporting Joseph's conviction, there was no prejudice and therefore no plain error requiring vacatur and remand. See Skelly, 442 F.3d at 99 ("This is not a case, then, where it is impossible to determine which of two competing theories formed the basis for conviction, for it is overwhelmingly likely that any reasonable juror would have convicted on the basis of the Government's primary theory. Accordingly, we conclude that the otherwise forfeited error in the district court's instruction does not constitute plain error that we may notice.").

Moreover, assuming arguendo that the error did affect Joseph's substantial rights by affecting the outcome of his district court proceedings, "the court of appeals has authority to order correction, but is not required to do so." Olano, 507 U.S. at 735. The Supreme Court has stated that a reviewing court's remedial discretion "should be employed in those circumstances in which a miscarriage of justice would otherwise result" — that is, if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (alteration, internal quotation marks, and citations omitted); see also United States v. Crowley, 318 F.3d 401, 415 (2d Cir. 2003). No error in the case before us calls into question the fairness,

integrity, or public reputation of judicial proceedings.

IV. The District Court's Evidentiary Rulings

The majority, anticipating a retrial, "urge[s] the District Court to give a more thorough consideration to the Defendant's claim to present Dr. Herriot's testimony [on Internet role-playing], in the event it is offered at retrial." Maj. Op. at [19]. The majority believes that Dr. Herriot's testimony would be probative and "highly likely to assist the jury to understand the evidence." Id. at [20] (internal quotation marks and citation omitted). Nevertheless, the majority acknowledges that "the admission or exclusion of expert testimony is committed to the discretion of the court." Id. at [19].

I agree that the exclusion of Dr. Herriot's testimony was within the sound discretion of the trial judge, but I would refrain from suggesting that the district court admit that evidence if it is presented at retrial. Even if Dr. Herriot was a qualified expert, as the majority seems to believe, see id. at [18-19], I believe the evidence was properly excludable under Federal Rule of Evidence 403. While testimony about a culture of role-playing on the Internet may have been "relevant" under the low threshold set by Rule 401, it was within the district court's discretion to find that the testimony lacked sufficient probative value. Evidence that some people engage in role-playing on the Internet sheds little light on whether Joseph did so in this particular case, when he was having sexually explicit

-47-

conversations with "Julie."

Weighing against this low probative value were "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Even without Dr. Herriot's expert testimony, there was ample opportunity to present the defense's role-playing theory from Joseph's own testimony that he was only engaging in sexual fantasy role-play. See Maj. Op. at [6-8, 12]. For example, Joseph testified that his Internet screen name "is kind of . . . an idealized version of what . . . Dennis Joseph can't do but can do on the internet." App. at 114. He further testified to his general practice of "playing pretend" on the Internet: "And going back maybe seven or eight years ago, I would pretend to be things that I'm actually not. I would pretend to be bodybuilders. I would pretend to be very wealthy. . . . Sometimes I would pretend to be homosexual." Id. It was the province of the jury to decide whether to credit Joseph's testimony that he was simply role-playing.

Because I believe the district court acted within its discretion in excluding Dr. Herriot's testimony, I would not suggest that it reconsider that decision upon retrial.

V. Conclusion

For the foregoing reasons, I respectfully dissent.